UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LERNER & ROWE NATIONAL, PLLC,** <br><br> Plaintiff; <br><br> v. <br><br> **BRANDNER LAW FIRM, LLC, and MICHAEL S. BRANDNER JR.,** <br><br> Defendants. | CIVIL ACTION NO. _____ |

## **COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff Lerner & Rowe National, PLLC, which respectfully represents as follows.

1.

Lerner & Rowe National, PLLC brings this action for breach of contract, breach of fiduciary duty, violation of the Louisiana Unfair Trade Practices Act, and dissolution, against Defendants Brandner Law Firm, LLC and Michael S. Brandner, Jr.

## **THE PARTIES**

2.

Plaintiff Lerner & Rowe National PLLC ("LRN") is a limited liability company organized in the State of Nevada. Its members are Glen Lerner ("Lerner") and Kevin Rowe ("Rowe"). Lerner is a citizen of Florida, and Rowe is a citizen of Arizona.

{N4129987.1}   1

3.

Defendant Brandner Law Firm, LLC ("BLF") is a limited liability company organized in the State of Louisiana. Its sole member is Michael S. Brandner, Jr., a citizen of Louisiana residing in Jefferson Parish.

4.

Defendant Michael S. Brandner, Jr. ("Brandner") is a resident of Louisiana residing in Jefferson Parish.

## JURISDICTION AND VENUE

5.

This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity among the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.

This Court has personal jurisdiction over the Defendants because the Defendants are citizens of Louisiana residing in this district.

7.

Venue lies in this judicial district under 28 U.S.C. § 1391(b)(1) because the Defendants reside in this district.

## FACTUAL ALLEGATIONS

8.

Lerner and Rowe are the founders of Lerner & Rowe, PC, d/b/a Lerner and Rowe Injury Attorneys, which is among the most successful personal injury and wrongful death law firms in the United States. They established their law firm in Arizona in 2005. In the years since, they have

expanded their services throughout the nation, both by establishing new geographic offices and by partnering with other law firms in local markets.

9.

Today, Lerner and Rowe are among the most successful attorneys in the United States in their practice area. Over the years, they have developed a highly innovative and efficient business model, and have developed innovative and highly successful marketing techniques and client services, to bring top-notch legal representation to clients in need.

10.

Sometime around 2017, Lerner met Brandner, a personal injury attorney based in Metairie, Louisiana who owned and operated BLF. At that time, Brandner had a small presence in the local market, with a small case load and only a handful of employees.

11.

Lerner and Rowe believed that Brandner could be a successful point man for their entry into the New Orleans market, and that for their mutual benefit Lerner and Rowe could help Brandner build a successful practice, utilizing their years of experience and success in managing law firms and marketing legal services.

12.

In October 2017, Lerner and Rowe and Brandner agreed to form and thereafter formed Michael Brandner Injury Attorneys, LLC, a Louisiana limited liability company ("MBIA"), whose two members are LRN and BLF, each holding a 50% share. In summary, Lerner and Rowe's interest in MBIA was through LRN, and Brandner's interest in MBIA was through BLF.

13.

LRN and BLF orally agreed to the terms of an Operating Agreement for MBIA (the "MBIA Operating Agreement"), including, but not limited to, the terms described below.

*The MBIA Operating Agreement*

14.

The members agreed that all members and their duly authorized representatives would, at all times, have access to the books and records of MBIA and that the books and records would be maintained by Jeffery Cahill as Chief Financial Officer of MBIA.

15.

The members agreed that pursuant to the terms agreed upon, LRN would make capital contributions to MBIA, including, among other things, providing support, assistance, and training to MBIA, and funding the operations of MBIA for 36 months (*i.e.*, through October 6, 2020), including staffing, salaries, and other operating expenses, so that MBIA could get off the ground while Brandner worked to raise MBIA's profile in the New Orleans market and beyond.

16.

The members agreed that BLF would make capital contributions to MBIA by contributing BLF's current portfolio of pending cases (subject to certain exceptions), with expected future settlements and/or recoveries, to MBIA.

17.

The members further agreed that each member would have a capital account consisting of (a) the amount of cash each member contributed to MBIA, plus (b) the agreed fair market value of any property contributed by the member, plus (c) the profits allocated to each member, minus (d) losses, (e) cash distributions, and (f) property distributions.

18.

The members agreed that MBIA would be managed by Brandner and Rowe as managers.

19.

The members agreed that, for 24 months starting in October 2017, MBIA would distribute to BLF the amount of $29,167 per month, of which $8,334 was a guaranteed payment and of which $20,834 was an advance on future distributions of profits to BLF.

20.

The members agreed that with the exception of the $20,834 per month, which was an advance of profits to BLF, that the net income, net loss, and capital gains for each fiscal year of the company would be allocated to the members pro rata in accordance with their 50/50 percentage interest.

21.

The members agreed that during the existence of MBIA, neither LRN nor BLF would practice law in Mississippi or Louisiana.

22.

The members agreed that MBIA would be dissolved and its assets disposed of and its affairs wound up on the first to occur of certain events, including any time after thirty-six months from the date of October 6, 2017 if any member determined that the company should be dissolved.

23.

The members agreed that during the winding up of the business of the company that the managers would continue as managers of the company to settle or liquidate the legal cases in the company's inventory, and that the books and records of the company would continue to be managed by Jeffery Cahill as Chief Financial Officer of MBIA.

24.

The members agreed that once the wind-up of the company's business was complete that the assets would be distributed in the following order: (i) to creditors other than members in order

of priority as provided by law; (ii) to creditors that are members; (iii) to those members of the company in respect of their capital accounts; and (iv) to those members of the company in respect of their share of the profits.

25.

Counsel for Brandner and BLF prepared an initial draft of a written operating agreement for MBIA. LRN provided initial comments on the draft, and a second draft was prepared by counsel for Brandner and BLF and provided to LRN. No written operating agreement was ever signed by any member.

26.

The members operated MBIA in accordance with their oral operating agreement, including but, not limited to, handling and allocation of capital accounts, guaranteed payments, advances, and distributions.

*Brandner fails to meet expectations*

27.

Over the next three years, Brandner was moderately successful in growing and promoting MBIA, but he nonetheless fell short of expectations, and overall the company was not as successful as the members had anticipated and the members realized that the company would require significant additional capital if it were to be successful.

28.

On December 16, 2019, Lerner emailed Brandner and proposed that in exchange for LRN agreeing to provide additional capital to the company, LRN would be granted a "preferred payback" agreement to reimburse LRN for its additional financial contributions to MBIA before splitting future profits among the members. Brandner replied the same day, stating that he was "not against" such a proposal and wanted to work on something "to make everyone happy."

29.

On August 12, 2020, Lerner again emailed Brandner because MBIA was approaching 36 months in existence, which would end LRN's original financial support commitment under the MBIA Operating Agreement. Lerner expected that, moving forward, Brandner would agree to assume greater financial responsibility for the company and contribute fifty percent of the cost of operations; otherwise, the business would not be profitable for LRN.

30.

Over the next several weeks, Lerner and Brandner continued to communicate about the need for Brandner to make a larger financial commitment to the MBIA if it were to continue to operate. Brandner, however, insisted that his contribution of "sweat equity" was being undervalued. It soon became clear that LRN and BLF could not continue in business together, due to LRN's outsized financial contributions to MBIA, with little in return; Brandner's refusal to contribute to the operational costs of the company; and Brandner's failure to generate sufficient cases and fees.

31.

On October 6, 2020, Lerner emailed Brandner with a proposal to part ways, allowing Brandner to buyout LRN's interest in MBIA.

32.

Negotiations were unsuccessful, and Brandner soon initiated a hostile course of action against Lerner and Rowe, LRN, and MBIA and breached his obligations under the MBIA Operating Agreement and breached his fiduciary duties to MBIA and LRN.

33.

On or about October 21, 2020, Brandner wrongfully excluded LRN, Lerner, Rowe, and Jeff Cahill, Chief Financial Officer of MBIA, from accessing MBIA's bank account and the books and records of the company.

34.

Around the same time, Brandner unilaterally and without authorization took all pending litigation matters belonging to MBIA, and misappropriated these cases and their expected fees for his own use.

35.

LRN also learned that Brandner had put his wife on the payroll of MBIA without the consent of LRN.

36.

On November 4, 2020, Brandner, through counsel, sent a demand letter to LRN, wrongfully accusing LRN of breaching the MBIA Operating Agreement and attempting to buyout LRN with a low-ball offer.

37.

Lerner responded promptly, noting that LRN had fulfilled all obligations and that Brandner himself had committed breaches of the MBIA Operating Agreement. Lerner gave Brandner a fair buy-out offer, which Brandner refused. Brandner's breaches of the MBIA Operating Agreement ultimately necessitated this lawsuit.

## COUNT 1 – BREACH OF CONTRACT (against BLF)

38.

All preceding paragraphs are re-alleged herein.

39.

The MBIA Operating Agreement is a valid and enforceable oral contract, binding on its members.

40.

The members agreed that each member would have access to the books and records of the company, both online and at the office of the company, and the right to inspect and copy (or download) them at reasonable times.

41.

Sometime in 2020, Brandner, on behalf of BLF, wrongfully and unilaterally denied LRN, Lerner and Rowe access to MBIA's books and records, in violation of the MBIA Operating Agreement.

42.

BLF, through Brandner, in violation of the MBIA Operating Agreement is wrongfully practicing law in Louisiana and Mississippi, in direct competition to MBIA.

43.

Brandner advised LRN that in violation of the MBIA Operating Agreement he had taken all litigation matters which were the property of MBIA and moved them to BLF and was acquiring future cases for BLF, not MBIA.

44.

BLF's breach of contract has caused LRN significant damages in an amount to be proven at trial.

**COUNT 2 – BREACH OF FIDUCIARY DUTY (against BLF and Brandner)**

45.

All preceding paragraphs are re-alleged herein.

46.

Pursuant to La. R.S. 12:1314, BLF, as manager of MBIA, owes a fiduciary duty to the company and its members. Brandner is personally liable for his actions.

47.

Brandner, as manager, and BLF, as member, breached their fiduciary duties to MBIA and LRN by wrongfully taking cases belonging to MBIA and transferring them to Brandner's own law firm, BLF, thereby depriving MBIA of the expected profits from these cases.

48.

Brandner, as manager, and BLF, as member, breached their fiduciary duties to MBIA and LRN by wrongfully locking out LRN from the books and records of MBIA and taking assets of MBIA for BLF and Brandner's personal use.

49.

Brandner, as manager, and BLF, as member, further breached their fiduciary duties by putting Brandner's wife on the payroll of MBIA without authorization.

50.

Brandner's and BLF's breaches of fiduciary duty caused LRN damages in an amount to be proven at trial.

**COUNT 3 – VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES ACT (against Brandner and BLF)**

51.

All preceding paragraphs are re-alleged herein.

52.

La. R.S. 51:1405 ("LUTPA") prohibits unfair methods of competition in the conduct of any trade or commerce in Louisiana.

53.

The statute provides that "any person who suffers any ascertainable loss of money or movable property . . . as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a presentative capacity to recover actual damages."

54.

"Person" means a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity." La. R.S. 51:1402(8).

55.

Brandner and BLF have engaged in unfair competition with MBIA and LRN by taking cases belonging to MBIA and transferring them to Brandner's own law firm, BLF, thereby depriving MBIA and LRN (as a member of MBIA) of the value and expected profits from these cases.

56.

Brandner abused his position of trust and access within MBIA to take MBIA cases in order to facilitate his unfair competition scheme.

57.

Brandner's actions, practices, and methods violate LUTPA.

58.

BLF and Brandner's actions caused LRN damages in an amount to be proven at trial.

**COUNT 4 – DISSOLUTION OF MBIA**

59.

All preceding paragraphs are re-alleged herein.

60.

It is not reasonably practicable to carry on the business of the company in conformity with the articles of organization or the MBIA Operating Agreement and/or the term of the company has reached the end of its stated term pursuant to the operating agreement.

61.

Accordingly, MBIA should be dissolved pursuant to the terms of the MBIA Operating Agreement or, alternatively, in accordance with law.

62.

Distributions to the members of MBIA should be made in accordance with the MBIA Operating Agreement or as provided by law.

## JURY DEMAND

63.

Plaintiff hereby demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, LRN respectfully demands a judgment against Defendants Brandner Law Firm, LLC and Michael S. Brandner, Jr., jointly and *in solido*, as follows:

    A.    such actual damages to which Plaintiff may prove at trial;

    B.    statutory damages;

    C.    pre-judgment and post-judgment interest;

    D.    reasonable attorneys' fees, expenses, and costs;

    E.    dissolution of MBIA pursuant to order of the Court;

    F.    such further damages or other relief to which Plaintiff may be justly entitled for the injuries, losses, abuses and injustices suffered. Plaintiff prays that the Court will award the relief requested; and

    G.    Plaintiff further prays for any and all other equitable, general, or special relief as may be appropriate and just.

Respectfully submitted this 25th day of November 2020.

                    Respectfully submitted,

                    */s/ Edward D. Wegmann*
                    Pauline F. Hardin (#6542)
                    Edward D. Wegmann (#13315)
                    Allison B. Kingsmill (#36532)
                    John R. Guenard (#36483)
                    JONES WALKER LLP
                    201 St. Charles Avenue Ste. 5100
                    New Orleans, Louisiana 70170-5100
                    Telephone:  (504) 582-8000
                    Email: phardin@joneswalker.com
                              dwegmann@joneswalker.com
                              akingsmill@joneswalker.com
                              jguenard@joneswalker.com

                    ***Attorneys for Plaintiff, Lerner & Rowe National, LLC***