## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LERNER & ROWE NATIONAL, PLLC** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-3228** |
| **MICHAEL S. BRANDNER, JR., ET AL.** | **SECTION I** |

## ORDER AND REASONS

Defendants Michael S. Brandner, Jr. ("Brandner") and Brandner Law Firm, LLC (the "Brandner Firm") have filed a motion[1] to dismiss the complaint[2] filed by plaintiff Lerner & Rowe National, PLLC ("L&R"). The defendants argue that dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate because the complaint fails to state a claim upon which relief can be granted.

This case is about the demise of a partnership between L&R (an out-of-state law firm) and Brandner (a Louisiana personal injury attorney), as well as his firm. L&R's claims generally allege that Brandner and his firm breached a partnership agreement and committed related misdeeds.[3]

The motion to dismiss is narrow. The defendants' "argument can be summed up in one sentence: ONLY LOUISIANA LAWYERS CAN EARN LOUISIANA LEGAL

---

[1] R. Doc. No. 6.

[2] R. Doc. No. 1.

[3] *See generally id.* L&R has asserted claims for breach of contract (against the Brandner Firm); breach of fiduciary duty (against the firm and Brandner); a violation of the Louisiana Unfair Trade Practices Act ("LUTPA") (against the firm and Brandner); and a claim for "dissolution of [Michael Brandner Injury Attorneys, LLC ("MBIA")]." *Id.* at 11.

FEES."[4]   The defendants reason that, because L&R has no members who are members of the Louisiana Bar Association, any partnership agreement relating to a Louisiana law practice that purported to include them is "an absolute nullity" because its object is "illegal and contrary to the public policy in Louisiana."[5]   As set forth below, the Court rejects the defendants' argument and denies the motion.

## I.

Following are the relevant factual allegations, which are treated as true for purposes of the motion.   L&R is a personal injury firm organized as an LLC in Nevada; its members are Glen Lerner and Kevin Rowe.[6]   In October 2017, L&R entered into an agreement with the Brandner Firm, a personal injury firm run by Brandner and based in Metairie.[7]   The parties hoped that "Brandner could be a successful point man for [L&R's] entry into the New Orleans [personal injury] market" and that "Lerner and Rowe could help Brandner build a successful practice utilizing their . . . experience . . . in managing law firms and marketing legal services."[8]   With those goals in mind, the parties formed MBIA, a Louisiana LLC "whose two members are [L&R and the Brandner Firm], each holding a 50% share."[9]

---

[4] R. Doc. No. 6-1, at 19 (defendants' memorandum in support of their motion to dismiss).  Ironically, the motion to dismiss actually contains a separate, argument regarding L&R's LUTPA claim.  That argument is treated *infra*.

[5] *Id.* at 2.

[6] R. Doc. No. 1, at 1 ¶ 2.

[7] *Id.* at 2–3 ¶¶ 8, 10–12.

[8] *Id.* at 3 ¶ 11.

[9] *Id.* at 3 ¶ 12.

By 2020, though, L&R had soured on the partnership, and after an unsuccessful effort to negotiate a path forward for the partnership, it attempted to exit pursuant to the parties' operating agreement.[10]  Brandner resisted and "initiated a hostile course of action" against L&R, which included "t[aking] all pending litigation matters belonging to MBIA, and misappropriat[ing them] and their expected fees for his own use."[11]  Eventually, this litigation ensued.

The defendants' motion to dismiss argues only that (1) the contract and fiduciary duty claims cannot succeed because, under Louisiana law, the agreement's purpose was "illicit," rendering the contract void, and (2) the LUTPA claim cannot succeed because "[u]nder Louisiana law, a client owns their legal cases, not their attorney" and, therefore, LUTPA offers "no remedies . . . for a value of expected profits from cases."[12]

## II.

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).

---

[10] *Id.* at 6–8 ¶¶ 27–37.
[11] *Id.* at 7–8 ¶¶ 32, 34.  The details are otherwise irrelevant to the instant motion.
[12] R. Doc. No. 6-1, at 6, 19.

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Furthermore, "the Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 6, 2011) (Vance, J.) (citing *Collins*, 224 F.3d at 498). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)) (alteration in original).

### III.

The Court will first address the defendants' primary argument (that any agreement is unenforceable because it is unlawful), and then their argument as to the LUTPA claim.

_The defendants have not established that Louisiana law prohibits out-of-state lawyers from "partnering" with Louisiana lawyers practicing in Louisiana._

The defendants argue that the claim must be dismissed because "there is no enforceable obligation under the Louisiana Civil Code as the contract is an absolute nullity."[13] This is so, they explain, because L&R, "an Arizona law firm with no lawyers being members of the Louisiana State Bar Association, cannot have an ownership interest [in a law firm] and cannot practice law in the State of Louisiana."[14] Because of this, they continue, "the legal cause in fact and the object of the contract, as pled in the Complaint, is unlawful, immoral, illicit, and contravenes public policy."[15]

The defendants base their argument on the Louisiana Rules of Professional Conduct. While a number of rules are cited, defendants rely primarily on Rule 1.17,

---

[13] _Id._ at 2.

[14] _Id._ The Court notes that allegations made by _defendants_ are not properly before the Court during its review of a 12(b)(6) motion. _See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC_, 594 F.3d 383, 387 (5th Cir. 2010) ("A court's review of a Rule 12(b)(6) motion to dismiss 'is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'") (quoting _Collins v. Morgan Stanley Dean Witter_, 224 F.3d 496, 498–99 (5th Cir. 2000)). Consequently, even if the Court agreed with the defendants' argument regarding the practice of law in Louisiana (it does not), it could not grant the motion to dismiss.

Separately: the defendants' memorandum states that "attorneys of [L&R] are no doubt well-acquainted with the reality that this Honorable Court may hold attorneys accountable to the state code of professional conduct;" it proceeds to draw the Court's attention to unrelated cases in which Lerner and Rowe were allegedly sanctioned. R. Doc. No. 6-1, at 8–9. Often, such references are disguised. These wolves come as wolves; they have no place in a brief filed by an officer of this Court.

[15] _Id._ at 2.

which addresses the sale of a law practice, and Rule 5.4, which governs the sharing of legal fees with nonlawyers.[16]  As described by the defendants, Rule 1.17 states that "only a member of the Louisiana State Bar Association may purchase an ownership interest in a law practice in Louisiana."[17]  The defendants argue that this alone sinks the contract, because "there was essentially a purchase of [Brandner's pre-existing law firm], with the exception of a few cases, for [L&R]'s capital contribution towards [the new Brandner firm.]"[18]  Rule 5.4 states that "[a] lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law."  La. R. Prof. Con. 5.4(b).  The defendants explain that, therefore, "[a]ny suggestion [of an] agreement between [Lerner and Rowe,] nonlawyers not admitted and not currently eligible to practice in this jurisdiction[,] . . . and [the original Brandner firm], owned and operated by Louisiana lawyer Brandner, is unlawful as a matter of fact and thus unenforceable."[19]

L&R offer a number of arguments in opposition.  The Court need not address them, save one, which it finds compelling.[20]  The parties agree that Louisiana law applies to this dispute.  And, as L&R notes, the Louisiana Supreme Court has made

---

[16] *Id.* at 9–10 (citing La. R. Prof. Cond. 1.17; 5.4).  Other rules are cited and similar arguments made.  Because they all fail for the same reason, the Court will not address each individually.

[17] *Id.* at 9.  While the Court will accept that description for purposes of the instant motion, it is not adopting it.

[18] *Id.* at 12.

[19] *Id.*

[20] That is not to say that the Court is not skeptical of the notion that for the purposes of the Rules, 'nonlawyer' is synonymous with 'not barred in Louisiana,' or the notion that all Louisiana law firms operating with partners/equity-interests who are barred elsewhere are currently operating illegally.

clear that multi-state law firms can operate in Louisiana, holding so in *Singer Hutner Levine Seeman & Stuart v. La. State Bar Ass'n*, 378 So. 2d 423 (La. 1979).

In *Singer*, the Louisiana Supreme Court noted that the Code of Professional Responsibility then in force "clearly envisions and allows a situation in which a Louisiana lawyer is in partnership with other lawyers licensed in other states, but not in Louisiana." *Id.* at 427.  The Court concluded that, to the extent La. R.S. 37:213 prohibited such a partnership, that "statute is constitutionally infirm because it is an impermissible infringement on the judicial authority" which would "frustrate [the Louisiana Supreme Court's] inherent authority to regulate the practice of law." *Id.* at 427.

In reply, the defendants cite no precedent calling *Singer* into question.[21]  They instead argue that the disciplinary rule which was the "foundation" of *Singer* "was discarded and not carried over by the Louisiana Supreme Court when it enacted the Rules of Professional Conduct."[22]  And, the replacement rule, which they claim is Rule 7.2(b)(1)(B), simply allows Louisiana lawyers to advertise in other jurisdictions "where the lawyers are license [sic] to practice."[23]

---

[21] Nor they do offer any explanation for *Singer*'s absence from their initial motion. They do, however, suggest that L&R engaged in "improper conduct" by sending correspondence regarding the filing of a motion for sanctions, as required by Rule 11(c)(2). R. Doc. No. 19, at 1 n.1.  While the Court has no reason to and is not opining on the merits of any sanctions motion, it does not understand why such correspondence is "improper."  Indeed, it would be inappropriate for L&R to seek sanctions *without first having sent such correspondence and given defendants an opportunity to correct the allegedly sanctionable conduct.  See* Fed. R. Civ. Proc. 11(c)(2).

[22] *Id.* at 2.

[23] *Id.* at 3 (citing La. Rule. Prof. Cond. 7.2(b)(1)(B)).

The defendants argue that, because of this change, and because the statute *Singer* described as constitutionally infirm was "never amended as unconstitutional," *Singer* does not apply.[24]   The Court assumes that this is an invitation to the Court to make an *Erie* guess as to the appropriate result under Louisiana law, though the defendants do not say so explicitly.  *See Phetteplace v. 415 Rue Dauphine, LLC*, 383 F. Supp. 3d 629, 630 (E.D. La. 2019) (Fallon, J.) ("Where, as here, there is no code provision or Louisiana Supreme Court case directly on point, the court must make an '*Erie* guess.'") (citing *Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 206 (5th Cir. 2007)); *see generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Fortunately, the Court need not so guess, because the defendants' assertion that the modern Louisiana Rules of Professional Conduct do not reflect the *Singer*-era rule is plainly wrong.  The old rule stated:

> A partnership shall not be formed or continued between or among lawyers licensed in different jurisdictions unless all enumerations of the members and associates of the firm on its letterhead and in other permissible listings make clear the jurisdictional limitations on those members and associates of the firm not licensed to practice in all listed jurisdictions; however, the same firm name may be used in each jurisdiction.

Disciplinary Rule 2-102(D).   The relevant modern rule, La. R. Prof. Cond. 7.10(d), states:

> A law firm with offices in more than one jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in any jurisdiction where an office is located.

---

[24] *Id.* at 3.  The defendants actually argue that *Singer* "supports [their] argument that the alleged relationship between the parties is an absolute nullity," apparently because it cited the statute it describes as infirm.  *Id.* at 4.

La. R. Prof. Cond. 7.10(d).[25]   Both versions countenance the possibility of a partnership between Louisiana attorneys and non-Louisiana attorneys.  Simply put, the Court does not see the distinction the defendants see.  *See also* Dane Ciolino, *Louisiana Legal Ethics: Standards and Commentary* (2020) at 375–76 (discussing the rule and citing *Singer*, suggesting it is still viewed as good law).

The defendants have failed to meaningfully distinguish *Singer*.  Consequently, the Court need only apply *Singer*.  *Cf. Phetteplace*, 383 F. Supp. 3d at 630–31.  The motion to dismiss the contract-related claims is denied.

## *The defendants have not established that an attorney cannot recover under the LUTPA for interference with their practice.*

The defendants argue that L&R's LUTPA claim fails as a matter of law because the alleged misconduct—Brandner eloping with MBIA's cases—is not actionable.[26] In the defendants' words, L&R "alleges that Defendants violated LUPTA [sic] because Defendants 'engaged in unfair competition with MBIA and [L&R] by *taking cases* belonging to MBIA and transferring them to Brandner's own law firm . . . thereby depriving MBIA and [L&R] (as a member of MBIA) of the *value and expected profits of these cases.*'"[27]  A claim based on such conduct, the defendants argue, fails because "'cases' are [not] assets of a legal practice," nor are they "bars of gold secured in a safe deposit box at the old Whitney Bank on St. Charles Avenue."[28]   But, while the

---

[25] *See* R. Doc. No. 21, at 2 (L&R's surreply offering a side-by-side comparison).
[26] R. Doc. No. 6-1, at 17–19.
[27] *Id.* at 18 (quoting R. Doc. No. 1) (emphasis added by defendants).
[28] *Id.* at 19.

defendants cite some precedent addressing the nature of a lawyer's interest in the outcome of a client's case, they offer no precedent in support of the notion that Louisiana law holds lawyers impervious to LUTPA claims for shenanigans associated with fees and cases. And their reply does not touch on the argument.

The defendants are welcome to argue that Louisiana law bars such a claim. But raising an apparently novel state law argument without reference to caselaw[29] will not do—and the Court declines to undertake the defendants' research for them. The argument is insufficiently briefed for the Court to evaluate it.

## IV.

For the reasons explained *supra*,

**IT IS ORDERED** that the motion is **DENIED**, reserving to the defendants the right to timely re-assert their argument regarding the LUTPA.

New Orleans, Louisiana, April 6, 2021.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[29] Defendants cite a number of sources regarding the nature of an attorney's interest in his client's case. But those do not touch the issue here, which is whether a party can bring a LUTPA claim based on some form of interference with their business.

10